IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ROGER WAYNE BATTLE            )
                             )
v.                           )    No. 3:14-01805
                             )    JUDGE CAMPBELL
UNITED STATES OF AMERICA      )


MEMORANDUM

I.  Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or

Correct Sentence (Docket Nos. 1, 33), filed by the Movant/Petitioner, pro se. The Government

has filed a Response (Docket No. 39).

For the reasons set forth herein, Petitioner's Motion To Vacate (Docket Nos. 1, 33) is

DENIED, and this action is DISMISSED.

Also pending before the Court is Petitioner's Motion To Check Status (Docket No. 45).

Because the issues raised in the Motion are addressed herein, the Motion is DENIED as moot.

II. Procedural and Factual Background

The Petitioner was named in 63 counts of a 66-count Superseding Indictment charging

multiple violent crimes in aid of racketeering, firearms offenses, and a drug conspiracy. (Docket

No. 245 in Case No. 3:09-00244).  The charges primarily arose out of five separate, gang-related

shootings, in which four victims were injured and two victims were killed. (Id.)  Eight other

individuals were named as Co-Defendants, five of whom entered plea agreements prior to trial,

and two of whom, Jessie Lobbins and Gary Eugene Chapman, proceeded to trial with the

Petitioner.

After a week-long trial, the Petitioner was convicted of 57 of the 63 charges. (Docket No. 737 in Case No. 3:09-00244). The Petitioner was acquitted of the six charges involving the alleged beating of another gang member. (Id.) As part of its verdict, the jury found the drug conspiracy in which the Petitioner participated involved cocaine and marijuana. (Id).

At the subsequent sentencing hearing, the Court sentenced the Petitioner to three consecutive life terms, plus 4,020 months of imprisonment. (Docket Nos. 924, 925 in Case No. 3:09-00244). The Petitioner appealed, and the Sixth Circuit appointed new counsel to represent the Petitioner on appeal. (Docket Nos. 926, 930 in Case No. 3:09-00244). The appeals court affirmed the Petitioner's convictions and sentence. (Docket No. 945 in Case No. 3:09-00244).

III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated based on the following grounds: (1) trial counsel operated under a conflict of interest during his representation of the Petitioner; (2) the Government violated the attorney-client privilege when it obtained audio recordings of jail calls between the Petitioner and trial counsel; (3) the jury was not impartial as one of the jurors failed to disclose her acquaintance with the Petitioner and others, and another juror observed the Petitioner in shackles and jail attire; (4) trial and appellate counsel provided ineffective assistance; (5) the prosecution team engaged in misconduct; (6) the Court gave improper jury instructions; (7) Petitioner's Speedy Trial rights were violated; (8) Petitioner's Confrontation Clause rights were violated; (9) the Petitioner's convictions violate Alleyne v. United States, 133 S.Ct. 2151 (2013); and (10) the Government failed to prove the interstate commerce element required for his convictions.

B. <u>The Section 2255 Remedy</u>

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. "'To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" <u>Humphress v. United States</u>, 398 F.3d 855, 858 (6th Cir. 2005)(quoting <u>Griffin v. United States</u>, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); <u>Ray v. United States,</u> 721 F.3d 758, 761 (6th Cir. 2013); <u>Arredondo v. United States,</u> 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" <u>Id.</u> Where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. <u>Blackledge v.</u>

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Ray, 721 F.3d at 761.

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Attorney-Client Jail Calls

Petitioner argues that the Government violated the attorney-client privilege when it obtained audio recordings of jail calls between the Petitioner and trial counsel. The Government argues that the prosecution did not listen to the calls, and that in any event, the calls were not protected by attorney-client privilege.

Prior to trial in the underlying criminal case, four defense attorneys, including Petitioner's trial counsel, filed a Joint Emergency Motion For Protective Order (Docket Nos. 559, 560 in Case No. 3:09-00244), which alleged that the Government had obtained recordings of telephone calls between certain defendants incarcerated in the Davidson County Jail and their attorneys, and requested that the Court order the Government to destroy the recordings, along with other relief. The Joint Motion indicated that the recordings had been included in discovery materials provided to the defendants in a separate federal criminal case, United States v. Adan, Case No. 3:10-00260, and a similar motion was filed in that case. (Docket No. 435 in Case No. 3:10-00260). Petitioner's trial counsel subsequently filed a motion requesting that the Court stay ruling on the motion because a decision on the issue was expected in the Adan case, and this Court granted the request to stay. (Docket Nos. 561, 562 in Case No. 3:09-00244). The Adan Court subsequently ruled that the recorded conversations were protected by the attorney-client

privilege, and to prevent any prejudice, set a procedure for redaction of those conversations from the discovery disks through an *in camera* review by the court. (Docket No. 608 in Case No. 3:10-00260).

In this case, the Government has filed the Statement of Melinda Sears, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), which provides, in pertinent part, as follows:

> From on or about September 11, 2008 until December 29, 2009, ATF Special Agent Melinda Sears reviewed jail calls made by Roger Wayne BATTLE. During S/A Sears' review of the jail calls, BATTLE would at times have a third party place a three way call to his defense counsel. Upon hearing that a call was being placed to defense counsel, S/A Sears would cease review of the call and/or the portion of the call between BATTLE and his attorney and/or his attorney's office. At no time in the review of BATTLE's jail calls did S/A Sears listen to conversations between BATTLE and his attorney.

(Docket No. 39-7, at 1).

A defendant may establish a Sixth Amendment violation where the government intentionally intrudes on the attorney-client relationship through the interception of confidential communications. See, e.g., United States v. Morrison, 449 U.S. 361, 364-65, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); United States v. Clark, 319 Fed. Appx. 395, 398-401 (6th Cir. Apr. 2, 2009); Lakin v. Stine, 229 F.3d 1152, *3-4, 2000 WL 1256900 (July 13, 2000); United States v. Steele, 727 F.2d 580, 585-87 (6th Cir. 1984). A defendant is entitled to relief for the prosecution's improper use of protected attorney-client information, however, only if he can show he suffered prejudice as a result. Clark, supra; Steele, 727 F.2d at 586 ("Even where there is intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted).

In this case, the Petitioner has failed to provide any evidence contravening Special Agent Sears' declaration that she did not listen to the recordings of his conversations with his attorney, or that his confidential communications with counsel were otherwise improperly used. Moreover, the Petitioner has failed to present evidence of, or even articulate, any prejudice he suffered as a result of the alleged violation. Accordingly, the Court concludes that Petitioner's Sixth Amendment claim is without merit.

D.  Juror Impartiality

Petitioner argues that the jury was not impartial as one of the jurors failed to disclose her acquaintance with the Petitioner and others, and another juror observed the Petitioner in shackles and jail attire.

Petitioner alleges that "juror Chandler" is the cousin of Latorsha Chandler, who he claims is the "on and off girlfriend" of Co-Defendant Curtis Green (who did not proceed to trial). The Petitioner alleges that the juror failed to mention that she knew the Petitioner or Co-Defendant Green, who is also the Petitioner's cousin, during jury selection. Petitioner further alleges that the juror had been present at Latorsha Chandler's residence when both he and Co-Defendant Green were present.  Petitioner claims that juror Chandler would have been biased against him because she knew of Co-Defendant Green's "rocky relationship" with Latorsha Chandler, and because the Petitioner had not been friendly with the juror on prior occasions.

A review of the trial transcript reveals that a juror whose last name is Chandler was a member of the Petitioner's trial jury. (Docket No. 856, at 6, in Case No. 3:09-00244). That juror did not express any familiarity with the Petitioner nor did she indicate that she recognized Co-Defendant Green's name during voir dire. (Docket No. 856 in Case No. 3:09-00244).

The Petitioner has not claimed that he was unaware of the connection with juror Chandler during the trial, and given his description of his interactions with her, it is reasonable to assume that he would have recognized her at some point before the trial was concluded. To the extent the Petitioner knew of this issue during the trial and failed to bring it to the attention of the Court, he is considered to have waived any juror misconduct claim. See, e.g., United States v. Morris, 977 F.2d 677, 685-86 (1st Cir. 1992); United States v. Bollinger, 837 F.2d 436, 438-39 (11th Cir. 1988).

Even if the Petitioner has not waived the issue, he has not established that his Sixth Amendment right to trial by an impartial jury was violated. A qualified juror need not be "totally ignorant of the facts and issues involved." See, e.g., Williams v. Bagley, 380 F.3d 932, 943 (6th Cir. 2004). An allegedly biased juror need only "swear that he could set aside any opinion he might hold and decide the case on the evidence." Id., at 944. In order to obtain a new trial based on a juror's non-disclosure during *voir dire*, the Petitioner "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id., at 945-46.

The Petitioner has not made such a showing. First, the Petitioner has not shown that juror Chandler actually recognized him, or the name of Co-Defendant Green, during the trial. Thus, he cannot establish that juror Chandler failed to answer honestly during *voir dire* as to whether she was familiar with the parties. In addition, the Petitioner has not shown that his "unfriendly" manner in an earlier encounter with juror Chandler, or her alleged knowledge of Co-Defendant Green's rocky relationship with Latorsha Chandler, prevented juror Chandler from laying aside those issues and rendering her verdict only on the evidence presented in the courtroom.

Consequently, he cannot establish that her disclosure of that information would have provided a valid basis for a challenge for cause. Petitioner's claim regarding juror Chandler is without merit.

Next, Petitioner alleges that a juror whose name he does not know, but whom he describes as a white male with salt and pepper hair, saw the Petitioner and Co-Defendant Chapman as they were being transported to the courthouse in prison clothes and shackles, and escorted by security personnel holding weapons. The Petitioner alleges that this incident undermined his presumption of innocence. The Petitioner does not explain why he did not bring this issue to the Court's attention during the trial.

The Sixth Circuit has held that "[e]xposure of the jury to a defendant in shackles requires a mistrial only when the exposure is so 'inherently prejudicial' as to deny the defendant's constitutional right to a fair trial." United States v. Moreno, 933 F.2d 362, 368 (6th Cir. 1991). Inherent prejudice, the court explained, may result from observing a shackled defendant in the courtroom, but does not result from observing a shackled defendant "for a brief period elsewhere in the courthouse." Id. A defendant must show actual prejudice "where the conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial." Id. See also United States v. Alsop, 12 Fed. Appx. 253, 258-59 (6th Cir. April 12, 2001).

The Petitioner does not allege that he was visibly restrained in handcuffs or shackles in in the courtroom, and therefore, he has not established that he was inherently prejudiced. In addition, the Petitioner has not shown any actual prejudice that resulted from the alleged brief observation by one of the jurors of security measures during transport of the defendants outside the courthouse. Petitioner's juror impartiality claims are without merit.

E.  Prosecutorial Misconduct

The Petitioner argues that Assistant United States Attorney Van Vincent and ATF Special

Agent Melinda Sears coerced Tracey Alexander not to testify for the Petitioner by falsely telling

her that the Petitioner had threatened to kill her, her fiancé, and her newborn child. As a result,

the Petitioner alleges, Ms. Alexander disappeared from early 2009 until March 2012, after his

trial had concluded. According to the Petitioner, Ms. Alexander, who is the mother of his

children, would have provided an alibi "as to many nights in which the indictment stated Battle

had committed crimes or ordered lower ranking gang members" to commit crimes. (Docket No.

1, at 16).

In Response, the Government has filed the Statement of Special Agent Sears, which

provides, in pertinent part, as follows:

> On August 19, 2010, ATF Special Agents Melinda Sears and Mark Ridner served
> a trial subpoena on Tracey Alexander for the case BATTLE, et al.  While serving
> the subpoena and obtaining current contact information, Ms. Alexander expressed
> concern that defendant BATTLE would be given her current address and contact
> phone number. S/A Sears advised Ms. Alexander that the information would not
> be provided to BATTLE and would only be used by S/A Sears to contact her
> relating to her court appearance. Ms. Alexander was extremely concerned for her
> and her family's safety. Ms. Alexander stated BATTLE had written her and her
> boyfriend letters from jail threatening her and her family. S/A Sears asked if she
> still had the letters to which she replied that she did. Ms. Alexander provided the
> letters to S/A Sears. S/A Sears advised Ms. Alexander that the government did not
> know of any threats to her or her family's safety at the time, but if anyone tried to
> contact her or threaten her in anyway regarding her testimony to call immediately.
> S/A Sears provided her cellphone number to Ms. Alexander and advised her to
> call 911 if there was an immediate threat and then call S/A Sears after. No threats
> were made to Ms. Alexander by S/A Sears or S/A Ridner. AUSA Van Vincent
> was not present during this contact.

(Docket No. 39-7, at 1-2).

Attached to the Statement are two handwritten letters signed by "Wayne B." (Docket Nos.

39-7, at 4-5).  One of the letters is undated and provides in pertinent part: "What me and Tracie share is true love and true love never dies only people do. So shall I say move with caution my friend because I don't have to be present to make my presence felt." (Id., at 5).  The other letter is dated December 25, 2008, and provides in part: "I have been humble and respectful and let dude continue to breathe. . ." (Id., at 4).

Due process guarantees a defendant the right to establish a defense by presenting his own witnesses. Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). Courts have held that certain actions by prosecutors or judges aimed at discouraging defense witnesses from testifying deprive the defendant of this right. Id.; United States v. Pierce, 62 F.3d 818, 832 (6th Cir. 1995).  To establish such a deprivation, however, the defense must show that the action "substantially interfered with any free and unhampered determination the witness might have had as to whether to testify." Id., at 833. Even where such interference is shown to have occurred, the defendant must show that the violation did not result in harmless error. United States v. Emuegbunam, 268 F.3d 377, 400 (6th Cir. 2001).

The Petitioner has not filed a statement from Ms. Alexander, nor has he otherwise provided any factual support for his allegation that the Government discouraged Ms. Alexander from testifying on his behalf.  Moreover, Petitioner has failed to delineate the specific nature of Ms. Alexander's purported testimony and how that testimony would have been material to the outcome of his trial. Having failed to establish the deprivation of his due process rights, and that such deprivation did not result in harmless error, the Petitioner's claim is without merit.

Petitioner next claims that Antwon Bailey was told by Special Agent Sears that if he tried to help the Petitioner by showing up to testify on Petitioner's behalf, he would join the Petitioner

in federal prison. According to the Petitioner, Mr. Bailey would have testified "as to things he overheard Carney, Delregus Alexander and Samuel Gains say on several occasions." (Docket No. 1, at 16).

In her Statement, Special Agent Sears states that she reviewed all witnesses and potential witnesses for the underlying criminal case, and is unaware of any witness by the name of Antwon Bailey. (Docket No. 39-7, at 2).[2] Special Agent Sears denies threatening any such witness. (Id.)

The Petitioner has not supported his claim with a statement from Mr. Bailey, nor has he otherwise provided any factual support for his allegation that the Government threatened an individual named Antwon Bailey. In addition, the Petitioner has failed to describe the specific nature of Mr. Bailey's purported testimony and how that testimony would have been material to the outcome of the trial. As with the claim involving Ms. Alexander, Petitioner has failed to establish a due process violation.

Petitioner also claims that Kevin Otey was afraid to testify because he was told by Murfreesboro Police Detective James Abbott that if he did not say what Detective Abbott wanted him to say, Mr. Otey would "go down" with the Petitioner. The Petitioner claims that Mr. Otey would have testified to the "events within the indictment," and "conversations" he had with Co-Defendants Alexander, Imes, Smith, Hightower, Gaines, and others. (Docket No. 1, at 16).

The Government has filed the Statement of Detective Abbott, in which he states that on July 28, 2008, he and Special Agent Sears and other investigators met with Mr. Otey. (Docket

---

[2] The Court notes that Rafael Antwon Butler a/k/a "Tweezy" was a victim identified in various counts of the Superseding Indictment, and testified for the Government at trial. (Docket Nos. 245 and 858 in Case No. 3:09-00244).

No. 39-18). According to Detective Abbott, Mr. Otey had been identified as a member of the Traveling Vice Lords gang. (Id.) Detective Abbott states that at no time did he advise Mr. Otey to give false information against members of the Vice Lords. (Id.) Detective Abbott indicates that Special Agent Sears recorded the interview with Mr. Otey. (Id.)

The Petitioner has not supported his claim with a statement from Mr. Otey, nor has he otherwise provided any factual support for his allegation that Detective Abbott threatened Mr. Otey. Moreover, the Petitioner has not indicated the specific nature of the "events" and "conversations" Mr. Otey would have described and how that testimony would have been material to the outcome of Petitioner's trial. Petitioner has failed to establish any due process violation involving Mr. Otey.

F.  Improper Jury Instructions

The Petitioner alleges that in reading Count Sixty-Four to the jury, the Court presented dates that did not match the dates in the written Superseding Indictment, making it impossible for the alleged conspiracy to have occurred between the dates alleged.

Count Sixty-Four of the Superseding Indictment alleges that the Petitioner and others participated in a drug conspiracy between in or about May 2007 through March 2008. (Docket No. 245, at 61-62, in Case No. 3:09-00244).  The transcript of the trial indicates that the Court mistakenly read the first date in Count Sixty-Four as "May 2008." (Docket No. 865, at 1689-90, 1699, in Case No. 3:09-00244; Docket No. 866, at 1780, in Case No. 3:09-00244). A recently-corrected transcript, however, indicates that the Court read the date as it was written in the

Superseding Indictment. (Docket No. 972 in Case No. 3:09-00244).[3]

Even if the Petitioner were correct that the Court misread the year in Count Sixty-Four, he would not be entitled to relief because he has failed to demonstrate any resulting prejudice. The Sixth Circuit has recognized three types of modifications to an indictment: an actual amendment, a constructive amendment, and a variance. See, e.g., United States v. Simms, 351 Fed. Appx. 64, 66-67 (6th Cir. Nov. 4, 2009). An actual amendment occurs when the actual text of the indicting instrument is changed. Id. A constructive amendment results when the terms of the indictment are changed through the presentation of evidence and jury instructions "which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." United States v. Pritchett, 749 F.3d 417, 428 (6th Cir. 2014). Constructive amendments are *per se* prejudicial and always require reversal. Id. Finally, a variance occurs when the charging instrument is unchanged but the evidence at trial proves facts materially different from those alleged in the indictment. 351 Fed.Appx. at 67. Variances are not *per se* prejudicial, and require reversal only if the defendant proves that a substantial right has been affected, such as his ability to defend himself at trial. Id.

The Petitioner does not appear to argue that an actual amendment to the written indictment occurred at trial. To the extent he contends that a constructive amendment occurred,

---

[3] Because of the discrepancy alleged by the Petitioner, the Court asked the Official Court Reporter to review her materials from the trial and determine whether the Court misread the date. The Court Reporter subsequently indicated that the Court read the date as written in the Superseding Indictment, and that the transcript (Docket No. 866) was incorrect. The Court Reporter has now filed a corrected transcript (Docket No. 972).

the Petitioner has not shown that a mistaken reading of the year "2008" instead of "2007" so modified the essential elements of the offense charged that there is substantial likelihood that he was convicted of an offense other than the one charged in the indictment. The evidence at trial and the arguments of the parties related to the date range of Count Sixty-Four as written in the Superseding Indictment. Furthermore, each juror was reading a hard copy of the Superseding Indictment while the Court was reading it aloud, and each juror had a copy of the Superseding Indictment during deliberations.[4]  The Petitioner has failed to establish that any mistaken reading of the year, if it occurred, resulted in a constructive amendment of Count Sixty-Four.

Finally, as stated above, the Petitioner has not established that a variance occurred since the facts presented at trial related to the date range of Count Sixty-Four as written. Accordingly, the Petitioner has not shown that he is entitled to a reversal of his conviction of Count Sixty-Four.

G. Speedy Trial

Petitioner argues that the Court violated his speedy trial rights by granting Co-Defendant Christopher Imes' motion to continue the trial in January, 2011. Petitioner appears to argue that the continuance prejudiced him because the recordings of his jail calls came to light after January, 2011.

On January 5, 2011, Co-Defendant Christopher Imes filed a motion to continue the trial, then scheduled for February 8, 2011, because a relative and law partner of counsel for Co-Defendant Imes had become seriously ill, and because the Government had only recently

---

[4]  The reading of the jury charge took several hours, and extended over two days.

announced that it would not seek the death penalty in the case. (Docket No. 502 in Case No. 3:09-00244). In response, counsel for the Petitioner requested that the Petitioner be severed and allowed to go to trial as scheduled. (Docket No. 508 in Case No. 3:09-00244). The Court subsequently issued an order continuing the trial to August 9, 2011, and denying Petitioner's request for severance. (Docket No. 518 in Case No. 3:09-00244). In reaching its decision, the Court considered the Petitioner's request for severance, and determined that he had failed to meet the burden of demonstrating "compelling, specific, and actual prejudice" from being tried with the co-defendants. (Id., at 1-2). As for the request for continuance, the Court found that Co-Defendant Imes stated good cause for his request, noted that neither the Government nor Co-Defendants Lobbin or Smith objected to the request, and specifically found that the period of delay was excludable under the Speedy Trial Act:

> The Court concludes that the period of delay occasioned by the granting of this continuance is reasonable and is excludable under the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq. The Court specifically finds that the interests of justice served by granting the continuance outweigh the interests of the public and the Defendant in a speedy trial on the date previously scheduled. 18 U.S.C. § 3161(h)(7)(A),(B). The Defendant is likely to be prejudiced if he is not adequately prepared for trial despite due diligence, and the public interest will not be served if such prejudice ultimately requires this case to be retried.

> The Court also concludes that the period of delay occasioned by the granting of this continuance is reasonable and is excludable under the Speedy Trial Act as to the co-defendants. The Act excludes 'a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.' 18 U.S.C. § 3161(h)(7). Therefore, the excludable delay occasioned by the granting of this continuance applies to the co-defendants. See United States v. Butz, 982 F.2d 1378, 1380-82 (9th Cir. 1993)(excludable delay for one defendant under Section 3161(h)(8)(A) applies to all co-defendants under Section 3161(h)(7)); United States v. Fogarty, 692 F.2d 542, 546 (8th Cir. 1982)(same); United States v. Edwards, 627 F.2d 460, 461 (D.C.Cir. 1980)(same). See also United States v. Holyfield, 802 F.2d 846, 847-48 (6th Cir. 1986)(an exclusion applicable to one

defendant applies to all co-defendants).

(Id., at 2-3).

The Petitioner has not suggested any grounds for concluding that the Court erred in making this finding, or that his speedy trial rights were otherwise violated. Accordingly, Petitioner's speedy trial claim is without merit.

## H. Confrontation Clause

The Petitioner argues that his Confrontation Clause rights were violated when: (1) Co-Defendant Samuel Gaines was allowed to testify to statements Frederick Carney made to him regarding the "motives of shootings, why he lied to police and more" (Docket No. 1, at 18); (2) Co-Defendants Demarco Smith and Christopher Imes were allowed to testify as to conversations they had with Kevin Otey "as to them (Smith/Imes) being forced to commit criminal acts and to what Otey supposedly told them" (Id.); and (3) Co-Defendant Gaines was allowed to testify to statements that "Lil Fred told me," referring to Frederick Carney. (Id.)

The Petitioner has not specifically identified the testimony to which he objects, and therefore, the Court is unable to fully evaluate Petitioner's claim. A review of the record reveals, however, that the Court specifically found that the Government had met the requirements of Federal Rule of Evidence 801(d)(2)(E) for admission of the co-conspirator statements elicited during the testimony at trial. (Docket No. 864, at 1554, in Case No. 3:09-00244). Rule 801(d)(2)(E) provides that a statement is not hearsay if it was made by the party's coconspirator during and in furtherance of the conspiracy. Statements that satisfy the requirements of Rule 801(d)(2)(E) do not violate the Confrontation Clause. See, e.g., Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); Bourjaily v. United States, 483 U.S. 171,

183-84, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); United States v. Mooneyham, 473 F.3d 280, 286-87 (6th Cir. 2007); United States v. Pike, 342 Fed. Appx. 190, 192-94 (6th Cir. Aug. 19, 2009)(Rule 801(d)(2)(E) does not require that a conspiracy be charged, or that both parties be coconspirators).

More specifically, as the Court found at trial, Mr. Gaines' testimony as to statements Mr. Carney made to him was admissible because the statements were made by Mr. Carney during and in furtherance of the conspiracy. (Docket No. 861, at 819, 830, in Case No. 3:09-00244). The testimony of Mr. Smith and Mr. Imes regarding Mr. Otey's statements to them was admissible because those statements were made by Mr. Otey during and in furtherance of the conspiracy. (Docket No. 859, at 314-15, 359, in Case No. 3:09-00244; Docket No. 860, at 612, in Case No. 3:09-00244). As Petitioner has failed to cite any persuasive legal authority suggesting that such statements violate the Confrontation Clause, this claim is without merit.

I. Alleyne v. United States

Petitioner challenges his sentence on the following counts based on the Supreme Court's decision in Alleyne v. United States, ___ U.S.___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013): Counts 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 40, 43, 46, 50, 53, 56, 60, and 62. (Docket No. 1, at 18). In Alleyne, the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime that must be submitted to the jury for decision. More specifically, the Court determined that the statutory mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A)(ii) of seven years for "brandishing" a firearm during an offense that violates Section 924(c)(1)(A) could not be imposed on the defendant because the jury had not made the finding of "brandishing."

The Supreme Court issued the opinion in <u>Alleyne</u> on June 17, 2013, after the Petitioner in this case was sentenced and the case was pending on appeal. (Docket Nos. 924, 925 in Case No. 3:09-00244). The Sixth Circuit affirmed the Petitioner's convictions and sentence on September 4, 2013, but did not address the applicability of <u>Alleyne</u> to the Petitioner's case. (Docket No. 945 in Case No. 3:09-00244). Having reviewed all the counts challenged by the Petitioner in light of the holding in <u>Alleyne</u>, however, the Court concludes that Petitioner's convictions and sentence remain unaffected.

Count 9 of the Superseding Indictment charged the Petitioner with participating in a conspiracy to use or carry firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(o). Section 924(o) provides for a maximum sentence of 20 years, and does not impose a mandatory minimum sentence. The Court sentenced the Petitioner to the maximum sentence of 20 years, or 240 months, on Count 9. (Docket No. 924 in Case No. 3:09-00244). Because the Court did not impose a mandatory minimum sentence as to Count 9, the holding in <u>Alleyne</u> does not affect the sentence imposed.

Count 12 charged the Petitioner with using or carrying a firearm during and in relation to a crime of violence against Rafael Antwon Butler, on November 13, 2007, in violation of 18 U.S.C. § 924(c)(1)(A), and for "discharging" the firearm under 18 U.S.C. § 924(c)(1)(A)(iii), which carries a mandatory minimum sentence of 10 years. The Court sentenced the Petitioner to the mandatory minimum sentence of 10 years, or 120 months, on Count 12, consecutive to all other Counts. (Docket No. 924 in Case No. 3:09-00244).

Although the "discharging" finding was not made by the jury, the Sixth Circuit and other courts have upheld sentences imposed in contravention of the <u>Alleyne</u> principle where there was

"overwhelming undisputed evidence that a defendant was responsible for the facts triggering additional statutory penalties – either an enhanced statutory maximum or minimum." <u>United States v. Climer</u>, 591 Fed. Appx. 403, 410 (6th Cir. Dec. 15, 2014). <u>See</u> <u>also</u> <u>United States v. Razo</u>, ___ F.3d ___, 2015 WL 1455076, at *8 (1st Cir. April 1, 2015)("... '[a] reasonable jury necessarily would have found the aggravating element beyond a reasonable doubt' even though it was not asked to do so here.")

The proof at Petitioner's trial relating to Count 12 indicated that on November 13, 2007, Petitioner's co-conspirators carried firearms, one of which was provided by the Petitioner, to 431 East State Street and fired multiple shots into the residence, injuring two of the five people who were in the residence at the time. (Presentence Investigation Report, at ¶¶ 97-101 (Docket No. 927 in Case No. 3:09-00244)). One of those five people was the victim named in Count 12, Rafael Antwon Butler. (<u>Id.</u>) The proof further indicated that 18 shell casings were recovered from the scene, including shell casings from the firearm provided by the Petitioner. (<u>Id.</u>)

Although the jury was not asked to determine whether a firearm had been discharged in connection with Count 12, the evidence was overwhelming that firearms were discharged as alleged, and a reasonable jury necessarily would have found that aggravating element beyond a reasonable doubt as to the Petitioner had it been asked to do so. Accordingly, the holding in <u>Alleyne</u> does not affect the sentence imposed on Count 12.

Counts 15, 18, 21, 24, 30, 33, 36, 40, 43, 46, 50, 53, and 56 also charged the Petitioner with using or carrying a firearm during and in relation to a crime of violence, against different victims, in violation of 18 U.S.C. § 924(c)(1)(A), and for discharging the firearm under 18 U.S.C. § 924(c)(1)(A)(iii). The Court sentenced the Petitioner to 300 months on each Count,

each Count to run consecutive to all other Counts. (Docket No. 924 in Case No. 3:09-00244). The sentence was imposed pursuant to 18 U.S.C. § 924(c)(1)(C)(i), which provides that in the case of a second or subsequent conviction under Section 924(c), the term of imprisonment shall be not less than 25 years.[5] The Sixth Circuit has held that the determination of whether a conviction is "second or subsequent" is not required to be decided by a jury. See, e.g., Mack, 729 F.3d at 609. Therefore, the Alleyne holding does not affect the sentence imposed on these Counts.

Counts 27 and 60 charged the Petitioner with using or carrying a firearm during and in relation to a crime of violence, which resulted in the death of two different victims, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j). The Court sentenced the Petitioner to life on each Count, consecutive to all other Counts. (Docket No. 924 in Case No. 3:09-00244). The sentence was imposed pursuant to 18 U.S.C. § 924(j)(1), which provides that where a murder is committed in the course of the offense, the sentence shall be for "any term of years or for life." The Court instructed the jury that in order to find the Petitioner guilty of Counts 27 and 60, the Government had to prove beyond a reasonable doubt that "[i]n the course of committing the crime of violence, the defendant caused the death of [the victim named in the particular count]." (Docket No. 866, at 1833, in Case No. 3:09-00244). The verdict form completed by the jury at the Petitioner's trial specifically referred to the "murder" charged in each Count, and the jury marked "guilty" for both Counts. (Docket No. 737 in Case No. 3:09-00244). Thus, to the extent

---

[5]  Section 924(c)(1)(D)(ii) provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including the term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."

the holding in <u>Alleyne</u> applies to these Counts, the sentences were imposed in accordance with that holding.

Count 62 charged the Petitioner with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), and 924(a)(2). The Court sentenced the Petitioner to life imprisonment on that Count. (Docket No. 924 in Case No. 3:09-00244). The sentence was imposed pursuant to 18 U.S.C. § 924(e), the Armed Career Criminal Act, which provides, in pertinent part:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

Case law has established that the maximum penalty under Section 924(e) is life imprisonment. <u>See</u>, <u>e.g.</u>, <u>United States v. Wolak</u>, 923 F.3d 1193, 1199 (6th Cir. 1991); <u>United States v. Walker</u>, 720 F.3d 705, 708 (8th Cir. 2013). The Sixth Circuit has held that the determination of whether Section 924(e) applies to a defendant is not a question to be submitted to a jury. <u>See</u>, <u>e.g.</u>, <u>United States v. Nagy</u>, 760 F.3d 485, 488 (6th Cir. 2014). Thus, the holding in <u>Alleyne</u> does not affect the sentence imposed on Count 62.

Accordingly, the Court concludes that <u>Alleyne</u> does not require a reduction in Petitioner's sentence on any of the challenged counts.

J. <u>Interstate Commerce</u>

The Petitioner challenges his conviction on Count 62 – felon in possession of a firearm and ammunition – by arguing that the Government failed to prove the firearm at issue moved in

21

interstate commerce within five years of the alleged offense.  Petitioner argues that the firearm was stolen in the early 1990s.

 In order to sustain a conviction for felon in possession of a firearm, the Government must prove that (1) the defendant previously had been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant possessed a firearm; and (3) the possession was in or affecting interstate or foreign commerce.  See Sixth Circuit Pattern Criminal Jury Instructions, 2011 Edition, § 12.01; United States v. Gardner, 488 F.3d 700, 713 (6th Cir.2007); United States v. Harris, 2012 WL 3194485, **2 (6th Cir. Aug. 7, 2012).  In order to establish the interstate commerce element, the Government must show that the defendant possessed the firearm outside its state of manufacture. See, e.g., United States v. Fish, 928 F.2d 185, 186 (6th Cir. 1991).  ATF Agent Greg Moore testified at trial that the firearm referenced in Count 62 was not manufactured in the state of Tennessee. (Docket No. 863, at 1453, in Case No. 3:09-00244).

As for Petitioner's five-year argument, there is no time limit on the interstate commerce element of this offense. Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977)(The interstate commerce element is met if the firearm "previously traveled in interstate commerce."); United States v. Chesney, 86 F.3d 564, 570-71 (6th Cir. 1996)(Firearm that has moved in interstate commerce "at any time" provides a sufficient nexus between the defendant's conduct and interstate commerce.)  Petitioner's interstate commerce claim is without merit.

K.  Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the

Petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 104 S.Ct. at 2065.

In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., at 2052.

Petitioner first contends that his trial counsel, Paul Bruno, was operating under a conflict of interest while representing him. Petitioner states that Mr. Bruno was working in the same law firm as attorney Richard Tennant throughout the trial, and that Mr. Tennant had represented the Petitioner in a 2005 state case. Petitioner contends that Mr. Tennant had also represented Co-Defendant Delregus Alexander in a 2007 drug case, and that both cases involved the same gang unit officers. Petitioner argues that Mr. Bruno refused to "bring up certain facts" concerning the earlier cases because he did not want to expose Mr. Tennant's alleged ineffectiveness. Petitioner contends that he wanted to represent himself, but Mr. Bruno refused to bring that issue to the

Court's attention.

If the Petitioner can establish that trial counsel was burdened by an actual conflict of interest, prejudice is presumed. Jalowiec v. Bradshaw, 657 F.3d 293, 314 (6th Cir. 2011).  To demonstrate an actual conflict of interest, the Petitioner must show that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Id.  To meet the second element, the Petitioner must show that "counsel was influenced in his basic strategic decisions by the interests of the former client," or in this case, the interests of Mr. Tennant. Id., at 317.

Petitioner has not made this showing. He has failed to articulate the "facts" Mr. Bruno failed to raise that adversely affected his representation of the Petitioner. Petitioner's conflict of interest claim is without merit.

Petitioner next argues that trial counsel was ineffective for failing to advise the Court that he wanted to represent himself.  Petitioner alleges that Mr. Bruno told him the Court would refuse the request due to the complexity of the case.  Petitioner also alleges that Mr. Bruno contacted the Petitioner's parents and told them that it was "a crazy idea." (Docket No. 1, at 8).

Petitioner has not offered any explanation for why *he* was unable to bring such a request to the Court's attention during pretrial hearings or by way of a letter or other filing. Moreover, the Petitioner has offered no credible evidence that he would have knowingly and intelligently waived his right to counsel, had he made such a request, given the nature of the underlying criminal case.

In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court recognized that the Sixth Amendment right to the assistance of counsel implies a

right of self-representation. To assert the right of self-representation, a defendant must do so unequivocally. See, e.g., United States v. Martin, 25 F.3d 293, 295 (6th Cir. 1994). In considering such a request, the court must be persuaded that the defendant is knowingly and intelligently waiving his right to counsel. See, e.g., United States v. McBride, 362 F.3d 360, 366 (6th Cir. 2004). In order to make that determination, district courts in the Sixth Circuit are required to ask the defendant the series of questions set forth in the *Bench Book for United States District Judges*.[6]

---

[6]  In United States v. McDowell, 814 F.2d 245 (6th Cir. 1987), the court reproduced those questions in the Appendix to the opinion:

> When a defendant states that he wishes to represent himself, you should ... ask questions similar to the following:
>
> (a) Have you ever studied law?
> (b) Have you ever represented yourself or any other defendant in a criminal action?
> (c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)
> (d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court must impose an assessment of at least $50 ($25 if a misdemeanor) and could sentence you to as much as __ years in prison and fine you as much as $__?(Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)
> (e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?
> (f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.
> (g) Are you familiar with the Federal Rules of Evidence?
> (h) You realize, do you not, that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?
> (i) Are you familiar with the Federal Rules of Criminal Procedure?

Id.

To put Petitioner's self-representation claim in context, the Court notes that the underlying criminal case was one of the most complex ever tried in this Court, and was difficult and challenging even for experienced criminal defense attorneys. The Superseding Indictment

---

(j) You realize, do you not, that those rules govern the way in which a criminal action is tried in federal court?

(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.

(l) (Then say to the defendant something to this effect):I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(o) If the answers to the two preceding questions are in the affirmative, [and in your opinion the waiver of counsel is knowing and voluntary,] you should then say something to the following effect: 'I find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself.'

(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

Guideline For District Judges from 1 Bench Book for United States District Judges 1.02-2 to -5 (3d ed. 1986).

814 F.2d at 251-52.

named nine defendants, was 74 pages long, contained 66 counts, and described multiple shootings and multiple victims. (Docket No. 245 in Case No. 3:09-00244). The Petitioner was initially subject to the death penalty, and the Court appointed "learned counsel" to assist trial counsel in that regard. (Docket Nos. 135, 379, 488 in Case No. 3:09-00244). Discovery in the case was estimated to include 100 computer discs containing documents, videotapes, audiotapes, and photographs. (Docket No. 940, at 13, in Case No. 3:09–00244). The jury charge was over 170 transcript pages long. (Docket Nos. 865 and 866 in Case No. 3:09-00244).

The Petitioner has not addressed any of these issues, and therefore, has failed to demonstrate that after participating in a Faretta colloquy, he would have knowingly and intelligently waived his right to counsel. Accordingly, the Petitioner has failed to show that he was prejudiced by any alleged failure by counsel to raise the issue with the Court.

Petitioner argues that trial counsel was ineffective for failing to raise the issue about Juror Chandler with the Court, and claims that he brought it to counsel's attention. Petitioner also argues that trial counsel was ineffective in his handling of the other juror issue. Petitioner states that Mr. Bruno told him he had advised the Court of the issue.

In order to demonstrate that counsel was ineffective for failing to strike a biased juror, the Petitioner must show that the juror in question was actually biased against him. Miller v. Francis, 269 F.3d 609, 616 (6th Cir. 2001). As explained above, Petitioner has failed to make this showing as to either juror. Accordingly, this claim is without merit.

Petitioner claims that trial counsel was ineffective for failing to interview or call the witnesses on the list Petitioner provided. Petitioner further claims that trial counsel did not advise him that he planned to present a self-defense theory as to the Brandon Harris death until trial,

which caused his defense theory to conflict with Co-Defendant Lobbins.

Petitioner has not provided the names of the witnesses he contends counsel should have called, nor has he explained the nature and relevance of their expected testimony. The vagueness of this allegation undermines its validity. See, e.g., McConnell v. United States, 162 F.3d 1162, 1998 WL 552844 (6th Cir. Aug., 10, 1998)(Conclusory, unsupported allegations are legally insufficient to support a motion to vacate).

As for the self-defense theory with regard to Petitioner's shooting of Brandon Harris, assuming the truth of Petitioner's allegation that counsel failed to discuss the defense with him prior to trial, the Petitioner has failed to demonstrate a reasonable probability that the result would have been different had he known of the theory earlier. In addition, the Petitioner has failed to explain the nature of the conflict between the self-defense theory and Mr. Lobbins' theory, nor has he explained how those theories conflicted to his detriment. Thus, this claim is also without merit.

Next, Petitioner argues that trial counsel was ineffective for failing to move for a mistrial or to strike the testimony of Lawrence Baker who invoked his Fifth Amendment rights before the jury.

The record of Petitioner's trial indicates that the Government called Mr. Baker, who had been incarcerated with Co-Defendant Lobbins, and asked him some preliminary questions about his convictions. (Docket No. 863, at 1428-29, in Case No. 3:09-00244). When the prosecutor asked Mr. Baker about his gang affiliation, however, Mr. Baker invoked the Fifth Amendment. (Id.) The Court then held a bench conference during which the prosecutor indicated that Mr. Baker had answered the same questions before the Grand Jury and did not indicate a desire to

plead the Fifth Amendment. (<u>Id.</u>, at 1429-31).  The Court inquired about Mr. Baker's legal

representation and determined that the Government could postpone Mr. Baker's testimony until

Mr. Baker's counsel could be present. (<u>Id.</u>)  After a short recess, the Government called another

witness. (<u>Id.</u>, at 1432-33).

The next day, outside the presence of the jury, the Court granted the Government's

request to confer immunity on Mr. Baker for his testimony. (Docket No. 864, at 1470-77, in Case

No. 3:09-00244). Mr. Baker subsequently testified to statements that were made and incidents

that occurred during his incarceration at the same facility as Co-Defendant Lobbins. (<u>Id.</u>, at 1478-

1504).

In order to establish that a mistrial was warranted, trial counsel would have been required

to show, at a minimum, that the Government knew Mr. Baker intended to invoke the Fifth

Amendment, and that the jury was likely to draw unwarranted inferences against the Petitioner as

a result. <u>See</u>, <u>e.g.</u>, <u>United States v. Ballard</u>, 280 Fed. Appx. 468, 470-71 (6th Cir. May 30,

2008)(Trial court must balance potential prejudice to both the prosecution and defense when

determining whether to allow a privilege-invoking witness to testify);  <u>United States v. Stone</u>,

218 Fed. Appx. 425, 432-33 (6th Cir. Feb. 26, 2007); <u>United States v. Reeves</u>, 83 F.3d 203, 207-

08 (8th Cir. 1996).

Here, the Petitioner has failed to articulate any prejudice to his defense resulting from Mr.

Baker's initial invocation of the Fifth Amendment prior to testifying fully before the jury. Thus,

any request for a mistrial by trial counsel would have been soundly denied, and Petitioner's claim

of ineffectiveness fails.

Petitioner also claims that trial counsel was ineffective for failing to move for a mistrial

or to strike the testimony of Maurice Boyd regarding the murder of a Vanderbilt professor and his sister by a Vice Lords gang member.

During the trial, Maurice Boyd testified that he was attacked by Co-Defendant Lobbins and others because he had talked to a state prosecutor about the murder of a Vanderbilt University professor and his sister. (Docket No. 863, at 1398-1427, in Case No. 3:09-00244). Mr. Boyd testified that another inmate, Lavonte Churchwell, had admitted to him that he was involved in the murders. (Id., at 1403, 1407, 1416). Mr. Boyd then went on to describe the attack and his resulting injuries. (Id.) Mr. Boyd's testimony was relevant to Counts 65 and 66 of the Superseding Indictment, which charged Co-Defendant Lobbins with assault with a dangerous weapon resulting in serious bodily injury, in violation of 18 U.S.C. § 1959(a)(3), and witness tampering, in violation of 18 U.S.C. §§ 1512(a)(2)(A) and (C). (Docket No. 245, at 73-74, in Case No. 3:09-00244).

The Petitioner has not explained how he was, in any way, prejudiced by the brief mention of the crime allegedly committed by Mr. Churchwell in connection with the two counts brought against Co-Defendant Lobbins. Absent such a showing, any request for a mistrial by trial counsel would have been soundly denied. Petitioner's claim of ineffectiveness fails.

Petitioner claims that trial counsel was ineffective for failing to request a change of venue or an out-of-county jury due to the media coverage given to the case.

A transfer of venue is mandatory if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." United States v. Poulson, 655 F.3d 492, 506 (6th Cir. 2011). Prejudice can be presumptive or actual. Id. "'Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like

atmosphere pervades both the courthouse and the surrounding community' and 'is rarely presumed.'" Campbell v. Bradshaw, 674 F.3d 578, 593 (6th Cir. 2012)(Quoting Foley v. Parker, 488 F.3d 377, 387 (6th Cir.2007)).  In the absence of presumed prejudice, the defendant must show that "'both the jury voir dire testimony and the extent and nature of the media coverage indicates a fair trial was impossible.'" Poulson, 655 F.3d at 507 (Quoting Ritchie v. Rogers, 313 F.3d 948, 952 (6th Cir. 2002)). Actual prejudice will not be established by "negative media coverage, prior knowledge of the issues involved in the case, or even 'a juror's preconceived notion as to the guilt or innocence of the defendant' without something more to rebut the presumption of impartiality.'" Id., at 507-08 (Quoting Foley, 488 F.3d at 387).

The Petitioner has not supported his claim with proof indicating that the pretrial publicity surrounding this case created an "inflammatory, circus-like atmosphere," such that a finding of presumptive prejudice would be warranted. Further, Petitioner has not supported any finding of actual prejudice by reference to jury voir dire testimony or otherwise. The Court questioned the jurors about media coverage during voir dire to ensure that fair and impartial jurors were selected. (Docket No. 855, at 14-15; Docket No. 856, at 7, 11-16; in Case No. 3:09-00244). The Petitioner "has not identified any juror who was actually seated that indicated an inability to set aside any prior knowledge about the case or to judge the case fairly and impartially." Campbell, 674 F.3d at 594.  As the Petitioner has failed to show any presumptive or actual prejudice based on pretrial publicity, he has not established that he suffered prejudice as a result of trial counsel's failure to move for a change of venue. Thus, Petitioner's claim of ineffective assistance in that regard is without merit.

Petitioner claims that trial counsel was ineffective for failing to provide the Court with a

letter from Co-Defendant Demarco Smith, which, the Petitioner alleges, explained Mr. Smith's motive for cooperation and his grudges against the other Defendants. Petitioner alleges that Mr. Bruno had the letter in his possession at trial, but failed to use it.

Petitioner does not provide a copy of the letter, nor does he provide any specific information about its contents. Thus, he has failed to show that with trial counsel's use of the letter, the result of the proceeding would have been different. The Court notes that trial counsel conducted a thorough and effective cross examination of Mr. Smith. (Docket No. 860, at 631-649, in Case No. 3:09-00244).

Petitioner also argues that trial counsel was ineffective for failing to object or request to strike the testimony of Co-Defendant Samuel Gaines regarding Frederick Carney's statements concerning the motive for the murder of Brandon Harris. Petitioner contends that these statements violate the Confrontation Clause.

As explained above, the statements of Mr. Carney referenced in Mr. Gaines' testimony qualified as co-conspirator statements under Fed.R.Evid. 801(d)(2)(E), and therefore, did not violate the Confrontation Clause. Accordingly, trial counsel was not ineffective in failing to object to such statements. See, e.g., Ludwig v. United States, 162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

Petitioner argues that trial counsel was ineffective for failing to cross examine certain government witnesses (Hightower, Imes, Smith, Alexander, Aile, Butler, Boyd) as to whether they had consumed any intoxicants on the days they testified about. Petitioner alleges that all of these witnesses admitted to drug addictions, so it was critical to inquire as to their state of mind during the relevant times in judging their credibility.

The Petitioner has offered no evidence to indicate that these witnesses were intoxicated during the events in question. In that regard, the Court notes that several of these witnesses admitted to being drug and/or alcohol users during their testimony. (Docket No. 859, at 294-95; Docket No. 860, at 674-79; Docket No. 861, at 939; Docket No. 863, at 1399-1400; in Case No. 3:09-00244).[7] Thus, the jury was made aware of their possible drug use, and the Petitioner has not shown that further inquiry about intoxication would likely have resulted in a different outcome. The Court notes that trial counsel conducted a thorough and effective cross examination of the named witnesses who testified against the Petitioner.

Petitioner argues that trial counsel was ineffective for failing to object or to request to strike the testimony of Co-Defendant Imes regarding conversations he had with Kevin Otey. Petitioner contends that the testimony of Mr. Imes and Mr. Smith as to what Mr. Otey told them violates the Confrontation Clause.

As explained above, the statements of Mr. Otey referenced in the testimony of Mr. Imes and Mr. Smith qualified as co-conspirator statements under Fed.R.Evid. 801(d)(2)(E), and therefore, did not violate the Confrontation Clause. Accordingly, trial counsel was not ineffective in failing to object to such statements. See, e.g., Ludwig v. United States, 162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

Petitioner argues that trial counsel was ineffective for failing to preserve motions, including a motion for severance, at the end of trial, which led to waiver on appeal. Other than

---

[7]   The Petitioner lists "Butler" but does not specify whether he is referring to Rafael Butler or Jennifer Butler.

the motion to sever, Petitioner has not specified the other motions Mr. Bruno allegedly failed to preserve.

Petitioner has not established prejudice for any failure to preserve the motion to sever as he has not established that the Court erred in rejecting trial counsel's pretrial severance motions. (Docket Nos. 504, 518 in Case No. 3:09-00244). Thus, this claim of ineffectiveness fails.

Finally, Petitioner claims that appellate counsel was ineffective for failing to file a motion with this Court after the <u>Alleyne</u> ruling was issued. Petitioner alleges that counsel sent him a copy of the motion, but failed to file it with the court. In response, the Government has filed a copy of a letter in which appellate counsel brings the <u>Alleyne</u> case to the attention of the Sixth Circuit while Petitioner's case was pending in that court. (Docket No. 39-17; Sixth Circuit Case No. 12-5873, Document No. 44, filed on June 26, 2013).

Petitioner has submitted nothing indicating that appellate counsel's letter was *not* filed with the Sixth Circuit, or that counsel should have filed the letter with this Court instead. In any event, as the Court explained in detail above, application of the holding in <u>Alleyne</u> to the Petitioner's case does not result in a reduced sentence. Petitioner's ineffectiveness claim fails.

In conclusion, the Petitioner has failed to demonstrate that he received the ineffective assistance of either trial or appellate counsel.


## IV. <u>Conclusion</u>

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255, and that Petitioner's Motion Under § 2255 should be denied and this action dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.


TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE