IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROGER WAYNE BATTLE, | ) |
| Petitioner, | ) ) ) |
| v. | ) NO. 3:14-cv-01805 ) ) JUDGE CAMPBELL |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

# MEMORANDUM

## I. INTRODUCTION

Pending before the Court are Petitioner's Motion to Vacate, Set Aside, or Correct Sentence in Accordance With 28 U.S.C. § 2255 (Doc. No. 59); the Government's Response (Doc. No. 62); and Petitioner's Reply (Doc. No. 63).

For the reasons set forth herein, Petitioner's Motion to Vacate (Doc. No. 59) is **DENIED,** and this action is **DISMISSED.**

## II. PETITIONER'S CRIMINAL PROCEEDINGS

Petitioner was named in 63 counts of a 66-count Superseding Indictment charging multiple violent crimes in aid of racketeering, firearms offenses, and a drug conspiracy. (Doc. No. 245 in Case No. 3:09-cr-00244).[1] The charges primarily arose out of five separate, gang-related shootings, in which four victims were injured and two victims were killed. (*Id.*) Eight other individuals were named as co-defendants, five of whom entered plea agreements prior to trial, and

---

[1] References to documents filed in the underlying criminal case will be referred to as "Crim. Doc. No. ___."

two of whom, Jessie Lobbins and Gary Eugene Chapman, proceeded to trial with the Petitioner.

After a multi-week trial before former Judge Todd J. Campbell, Petitioner was convicted of 57 of the 63 charges. (Crim. Doc. Nos. 734, 737). Petitioner was acquitted of the six charges involving the alleged beating of another gang member. (*Id.*) At the subsequent sentencing hearing, Judge Campbell sentenced the Petitioner to three consecutive life terms, plus 4,020 months of imprisonment. (Crim. Doc. Nos. 924, 925). Petitioner appealed his convictions and sentence, and the Sixth Circuit affirmed. (Crim. Doc. No. 945).

Petitioner filed the original motion to vacate in this case on September 5, 2014. (Doc. No. 1). Judge [Todd] Campbell denied all Petitioner's claims in a Memorandum and Order issued on May 1, 2015. (Doc. Nos. 46, 47).

On June 24, 2019, the Supreme Court issued its decision in *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019), holding the "residual clause" definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(B) unconstitutionally void for vagueness. On August 29, 2019, the Clerk's Office received and filed Petitioner's *pro se* request for appointment of counsel to represent him, as well as permission to file a second or successive motion to vacate based on *Davis*. (Crim. Doc. No. 981). Petitioner's request carried his criminal case number. (*Id.*) Petitioner's criminal case was subsequently reassigned to the undersigned Judge, and this Court granted the request. (Crim. Doc. No. 1003). In the meantime, Petitioner filed a *pro se* motion seeking authorization from the Sixth Circuit, which the court denied on September 9, 2020. (Doc. No. 51). The court later considered a separate request filed by Petitioner's counsel, and on November 25, 2020, granted authorization to file a second motion to vacate challenging Counts 27 and 60. (Doc. No. 53).

Petitioner has now filed his second Motion to Vacate (Doc. No. 59) in the instant case, which has been reassigned to the undersigned Judge. Through the Motion, Petitioner challenges his convictions on Counts 27 and 60. The issues have been fully briefed and the case is now ripe for decision.

## III. ANALYSIS

### A. Section 2255 Proceedings

Petitioner has brought this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or

conclusions rather than statements of fact.'" *Monea v. United States,* 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)).

Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

B. **Statute of Limitations**

The Government initially argues the statute of limitations bars consideration of Petitioner's claims here. Section 2255(f) provides for a one-year statute of limitations for actions brought under Section 2255:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> > (1) the date on which the judgment of conviction becomes final;
>
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The Government assumes Subsection (3) applies here because Petitioner's claims are based on the new rule of constitutional law recognized in *Davis*. *Davis* was issued on June 24, 2019, and according to the Government, Petitioner's request for authorization was filed with the Sixth Circuit over a year later, on September 15, 2020. Thus, the Government argues, Petitioner's claims are barred.

4

As Petitioner points out, however, his first request for relief based on *Davis* was filed *pro se* in this Court, albeit in his criminal case, on August 29, 2019. (Crim. Doc. No. 981). In *In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997), the Sixth Circuit held that requests for permission to file second or successive motions that are filed in the district courts should be transferred to the appeals court, but the request is deemed filed on the date the petitioner mailed it to the district court. The Government has not cited any authority suggesting the *Sims* holding with regard to the "deemed-filed" date does not apply to Petitioner's *pro se* request mailed sometime before August 29, 2019. Thus, the Court concludes Petitioner's *Davis*-based claims, filed within one year after *Davis* was issued, are not barred by the statute of limitations.

C. **Murder in aid of racketeering**

In challenging the validity of his convictions on Counts 27 and 60, Petitioner relies on *United States v. Davis,* which in turn, relied on *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015). In *Johnson*, the Supreme Court held the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), was unconstitutionally vague. The ACCA imposes a 15-year mandatory minimum sentence for defendants convicted of certain firearms offenses who have three previous convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The "residual clause" is part of the italicized definition of "violent felony" as set forth below:

>   (2) As used in this subsection–
>
>   * * *
>
>   > (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

5

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another. . .*

(emphasis added). The Court subsequently relied on *Johnson* in striking down the similarly-worded residual clause in 18 U.S.C. § 16. *Sessions v. Dimaya,* ___ U.S. ___, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).

Based on these decisions*,* the defendants in *United States v. Davis* challenged their convictions under 18 U.S.C. § 924(c),[2] because the definition of "crime of violence" applicable to that offense contains a residual clause similar to that invalidated in *Johnson* and *Dimaya*. The Section 924(c) "crime of violence" definition provides as follows, with the residual clause set forth in italics:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--

---

[2] Section 924(c) provides:

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime —

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

6

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

Concluding that there was no material distinction between the residual clause in Section 924(c)(3)(B) and the residual clauses considered in *Johnson* and *Dimaya*, the *Davis* Court struck down Section 924(c)(3)(B) as unconstitutionally void for vagueness. 139 S. Ct. at 2326-27. The Sixth Circuit has subsequently held that *Davis* announced a new rule of constitutional law that applies retroactively to cases on collateral review. *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020).

Based on *Davis,* Petitioner's Section 924(c) convictions on Counts 27 and 60 are invalid if the underlying "crimes of violence" alleged in the Superseding Indictment satisfy only the residual clause portion of the statutory definition. On the other hand, if the underlying crimes satisfy Subsection (A) of the definition, often referred to as the "use-of-force" clause, as the Government argues here, the convictions are not affected by *Davis*.

As set forth above, the use-of-force clause describes offenses that have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The Supreme Court has defined the term "physical force" as "violent force – that is, force capable of causing physical pain or injury to another person." *[Curtis] Johnson v. United States*, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271, 176 L. Ed. 2d 1 (2010); *see also United States v. Rafidi,* 829 F.3d 437, 445 (6th Cir. 2016) (applying definition to Section 924(c)(A)); *Knight v. United States*, 936 F.3d 495, 499 (6th Cir. 2019) (same).

7

In determining whether an offense satisfies this definition, courts are to use the "categorical approach," which focuses on the statute defining the offense rather than the facts underlying the actual crime. *See, e.g., Knight,* 936 F.3d at 498. If a statute is "divisible," in that it lists elements in the alternative to define multiple crimes, however, courts are to use the "modified categorical approach." *Id.* Under that approach, the court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine which portion of the statute the defendant violated. *Id.* (*citing Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005)). Once the elements are determined, the court must "focus on the minimum conduct criminalized" by those elements. *Moncrieffe v. Holder,* 569 U.S. 184, 191, 133 S. Ct. 1678, 185 L. Ed. 2d 727 (2013); *Fullum v. United States,* 756 Fed. Appx. 568, 570 (6th Cir. 2018). But the court is to keep in mind that there must be a "realistic probability, not a theoretical possibility" that the state would apply the statute to the "minimum conduct" in question. *Fullum,* 756 Fed. Appx. at 570.

The predicate offenses at issue here are conspiracy to murder, and murder, in aid of racketeering, as charged in Counts 27 and 60. Specifically, Count 27 charged Petitioner as follows:

COUNT TWENTY-SEVEN
(Use and Carrying Of A Firearm In Conspiracy To Murder and The Murder
of Moss James Dixon)

The Grand Jury Further Charges:

106. On or about November 14, 2007, in the Middle District of Tennessee, ROGER WAYNE BATTLE a/k/a 'T-WAYNE', CHRISTOPHER DAVID IMES a/k/a 'CHRIS', and DEMARCO LEWAYNE SMITH s/k/a/ 'MARCO', did knowingly use and carry a firearm during and in relation to a crime of violence for which he/she may be prosecuted in a court of the United States, that is the conspiracy to commit murder against Moss James Dixon, as defined in Tennessee Code Annotated Sections 39-12-103, 39-13-201 and 39-13-202, in violation of Title 18, United States Code, Section 1959(a)(5), the commission of murder against

Moss James Dixon, as defined in Tennessee Code Annotated Sections 39-13-201 and 39-13-202, in violation of Title 18, United States Code, Section 1959(a)(1), the assault to commit bodily injury and the assault with a deadly weapon in violation of Tennessee Code Annotated Sections 39-13-102(a)(1)(A) and 39-13-102(a)(1)(B) in violation of Title 18, United States Code, Section 1959(a)(3), and did in the course of such act cause the death of Moss James Dixon and the killing is a murder as defined in Title 18, United States Code, Section 1111.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(j),³ and 2.

(Crim. Doc. No. 245, at 34).

Count 26, alleged that Petitioner, in aid of racketeering, "did commit the murder of Moss James Dixon, that is, did commit the premeditated and intentional killing of another, to wit Moss James Dixon, in violation of the law of the State of Tennessee, that is Tennessee Code Annotated Sections 39-13-201, 39-13-202, 39-11-401, and 39-11-402," in violation of 18 U.S.C. §§ 1959(a)(1)⁴ and 2. (*Id.,* at 33).

Count 60 charged Petitioner as follows:

COUNT SIXTY
(Use and Carrying Of A Firearm In The Conspiracy To Murder and The Murder of Brandon Harris a/k/a 'Chicago')

---

³ Section 924(j) imposes a life sentence on a person who "causes the death of a person though the use of a firearm – if the killing is a murder (as defined in section 1111)."

⁴ Section 1959, referred to as the VICAR statute, provides, in pertinent part, as follows:

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished –

(1) *for murder*, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both . . .

9

The Grand Jury Further Charges:

171. The allegations of Paragraphs 1-14 are hereby re-alleged and incorporated as if fully set forth herein.

172. On or about February 10, 2008, in the Middle District of Tennessee, for the purpose of maintaining and increasing position in the Vice Lords, an enterprise engaged in racketeering activity, the defendants, ROGER WAYNE BATTLE a/k/a 'T-WAYNE' and JESSIE LOBBINS a/k/a 'JESSIE OLIVER' a/k/a 'TRAP', aided and abetted each by the other, did knowingly use and carry a firearm during and in relation to a crime of violence for which he may be prosecuted in acourt of the United States, that is the conspiracy to commit murder against Brandon Harris a/k/a 'Chicago', as defined in Tennessee Code Annotated Sections 39-12-103, 39-13-201, and 39-13-202, and the commission of murder against Brandon Harris a/k/a 'Chicago', as defined in Tennessee Code Annotated Section 39-13-201 and 39-13-202, in violation of Title 18, United States Code, Sections 1959(a)(1) and 1959(a)(5), and did in the course of such act cause the death of Brandon Harris a/k/a 'Chicago' and the killing is a murder is [sic] as defined in Title 18, United States Code, Section 1111.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(j) and 2.

(Crim. Doc. No. 245, at 59-60).

Count 59, alleged that Petitioner, in aid of racketeering, "did commit the premeditated and intentional killing of another, to wit Brandon Harris a/k/a 'Chicago', in violation of the laws of the State of Tennessee, that is Tennessee Code Annotated Sections 39-13-201, 39-13-202, 39-11-401, and 39-11-402," in violation of 18 U.S.C. §§ 1959(a)(1) and 2. (*Id.,* at 58-59).

In granting authorization to raise the challenge here, the Sixth Circuit held that "to the extent that these predicate murder-in-aid-of-racketeering offenses [under 18 U.S.C. § 1959(a)(1)] are premised on Tennessee Code Annotated § 39-13-202, Battle has made a prima facie showing that his offense might no longer qualify as a crime of violence." (Doc. No. 53, at 4). The Tennessee statute referenced by the Sixth Circuit, Tennessee Code Annotated Section 39-13-202, defines "first degree murder" as the "premeditated and intentional killing of another," as well as felony

10

murder, and killing by a destructive device or bomb.[5]

Petitioner argues that first degree murder, under Tennessee law, does not include an element of violence as required by the use-of-force clause because a person can be guilty of murder by withholding food and water, citing *State v. Bordis,* 1994 WL 672595, at *13 (Tenn. Crim. App. Dec. 1, 1994).

The Sixth Circuit has not specifically addressed the issue of whether first degree murder under Tennessee law constitutes a "crime of violence" under Section 924(c)(3)(A). The court has, however, rejected the argument that injuring someone by indirect force, like withholding food, does not involve a "use of force." In *United States v. Verwiebe,* 874 F.3d 258 (6th Cir. 2017), the court held that assault with a dangerous weapon, and assault resulting in serious bodily injury, qualified as "crimes of violence" under the Sentencing Guidelines version of the use-of-force clause.[6] In addressing the latter type of assault, the court explained that assault using indirect force resulting in serious bodily injury, such as poisoning, involves violent force sufficient to satisfy the use-of-force clause:

> Hoping for a different conclusion, Verwiebe invokes *United States v. Scott*, No. EP-14-CR-42-PRM, 2014 WL 4403162 (W.D. Tex. July 28, 2014), claiming it shows that assault under § 113(a)(6) is not a crime of violence because it may involve indirect force that causes serious bodily injury. In that case, the district court used the example of poisoning a victim's drink as evidence that § 113(a)(6) swept too broadly. *Id*. at *4. But we have refused to draw a line between direct and indirect force in this context. *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012). And for ample reason. *A defendant uses physical force whenever his*

---

[5] Tennessee Code Annotated Sections 39-13-201, 39-11-401, and 39-11-402 are also referenced in Counts 27 and 60. Section 39-13-201 defines "criminal homicide" as "the unlawful killing of another person, which may be first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide or vehicular homicide." Sections 39-11-401 and 39-11-402 address criminal responsibility.

[6] Section 4B1.2(s) of the Sentencing Guidelines defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."

11

> *volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.' See id*. We see no problem with the poison scenario. The 'use of physical force' is not the drop of liquid in the victim's drink; it is employing poison to cause serious bodily harm. *See United States v. Castleman*, 572 U.S. 157, 134 S. Ct. 1405, 1415, 188 L. Ed. 2d 426 (2014). Under Verwiebe's theory, tripping somebody into oncoming traffic, or for that matter perpetrating a sarin gas attack, would not be a crime of violence. Creative minds, once unhinged from common sense, might even suggest that pulling the trigger of a gun is not a sufficiently direct use of physical force. Sentencing law does not turn on such fine, reality-defying distinctions.

874 F.3d at 261 (emphasis added); *see also Buffar v. United States,* 2019 WL 2869167, at *7 (M.D. Tenn. July 3, 2019) (applying *Verwiebe* to conclude that assault with intent to commit murder under Tennessee law is a "violent felony" under the use-of-force clause of the ACCA). Thus, under *Verwiebe,* a defendant's actions that result in the victim's death necessarily involve physical force even if the force applied is indirect. In other words, it is causing the death of the victim by withholding food that constitutes the use of force. Based on this reasoning, Petitioner's death-by-starvation argument fails.[7]

Other courts have applied this same logic in determining that first degree murder under various state statutes satisfies the use-of-force clause. For example, in considering similar claims by two of Petitioner's co-defendants, Judge Aleta A. Trauger specifically held that the same

---

[7] To the extent the courts in *United States v. Mayo*, 901 F.3d 218, 227 (3d Cir. 2018) and *United States v. Scott,* 954 F.3d 74, 77 (2nd Cir. 2020), cited by Petitioner, rely on the distinction between direct force and indirect force, their reasoning conflicts with *Verwiebe,* and therefore, the Court declines to follow them here. The Court also notes that, after Petitioner filed his brief, the Second Circuit vacated the panel opinion in *Scott,* and held, in an *en banc* decision, that New York first-degree manslaughter is a categorically violent crime under the use-of-force clauses of the ACCA and the Sentencing Guidelines "whether a defendant acts by commission or omission. . ." *United States v. Scott,* 990 F.3d 94, 113 (2nd Cir. 2021).

The Court is also unpersuaded that the Sixth Circuit's decision in *Dunlap v. United States,* 784 Fed. Appx. 379, 388-89 (6th Cir. 2019), cited by Petitioner, requires a different result. In *Dunlap,* the court held that a Tennessee aggravated assault statute did not satisfy the ACC use-of-force clause because the statute criminalized the failure to protect a child or adult from aggravated assault committed by someone else. Petitioner has not explained why committing murder by starvation, or by poison, should be equated with failing to prevent an aggravated assault committed *by someone else*.

Tennessee statutes at issue here satisfy the use-of-force clause. *See United States v. Montez Hall,* 2021 WL 119638, at *8 (M.D. Tenn. Jan. 13, 2021) ("Regardless of the approach employed and regardless of how broadly murder is defined by the underlying state statute, courts have unanimously agreed that murder, including murder by starvation or other acts of omission, is a crime of violence."); *Wilson v. United States*, 2021 WL 1088178, at *8 (M.D. Tenn. Mar. 22, 2021) (same). Similarly, in *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019), the Fourth Circuit held that first degree murder under Virginia law satisfies the use-of-force clause under Section 924(c)(3)(A) even if the crime could be accomplished by poisoning: "[S]o long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent." In *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018), the Eighth Circuit held that attempted murder under Iowa law qualifies under the use-of-force clause of the Sentencing Guidelines even if the crime could be accomplished by omission, such as a caregiver withholding sustenance to a dependent: "In Peeples's example of a care-giver refusing to feed a dependent, it is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force . . . It does not matter that the harm occurs indirectly as a result of malnutrition." *See also Shrader v. United States,* 2019 WL 4040573, at *3 (S.D.W. Va. Aug. 27, 2019) (holding that murder under West Virginia law, which includes murder by poisoning or starvation, satisfies the use-of-force clause in the ACCA); *United States v. Kirby*, 2017 WL 4539291, at *11 (D.N.M. Feb. 16, 2017) (holding that attempted murder under New Mexico law satisfies the use-of-force clause in the ACCA because ". . . intentionally caus[ing] any effect that could so damage a person's body as to end his life is necessarily an act of extreme violence, no matter the indirectness of the means employed to bring about the fatal consequence.");

*Sanchez v United States,* 2021 WL 1164538, at *3-5 (S.D.N.Y. March 25, 2021) (holding that murder and attempted murder under New York law, even if committed via poison or omission, satisfies Section 924(c)(3)(A)).

The Government, and certain other courts, have taken the approach that, in analyzing whether murder in aid of racketeering under 18 U.S.C. § 1959 constitutes a "crime of violence," a court is to consider the elements of "generic" murder, rather than murder as defined by Tennessee law. Even if the court engages in that analysis, however, the outcome is the same. It is now well-established that generic murder, generally held to be analogous to 18 U.S.C. § 1111,[8] criminalizes the killing of the victim, which involves a level of force sufficient to satisfy the use-of-force clause. *See, e.g., United States v. Arnold,* 2019 WL 5842925, at *3 (E.D. Mich. Nov. 7, 2019) (holding that "generic" VICAR murder is analogous to 18 U.S.C. § 1111, which qualifies as a "crime of violence" under the use-of-force clause); *Montez Hall v. United States,* 2021 WL 119638, at *8-9; *Keairus Wilson v. United States,* 2021 WL 1088178, at *5-8; *see also* (Doc. No. 74, at 3 (In Order authorizing Petitioner's claim, Sixth Circuit states "Williamson's predicate offense of murder as defined in 18 U.S.C. § 1111" qualifies as a crime of violence under Section 924(c)(3)(A)).

---

[8] Section 1111 provides, in pertinent part, as follows:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

For these reasons, Petitioner's argument that murder in aid of racketeering is not a "crime of violence" for purposes of Section 924(c) is without merit, and his challenge to Counts 27 and 60 on that basis fails.

**D. Conspiracy to commit murder in aid of racketeering**

In his Motion, Petitioner also argued that conspiracy to commit murder in aid of racketeering, alleged as one of the predicate offenses in Counts 27 and 60, does not qualify as a crime of violence under the use-of-force clause (only under the now-invalid residual clause). In response, the Government argued the Court need not consider this argument because the jury specifically found Petitioner guilty of the predicate offense of murder in aid of racketeering in Counts 26 and 59, which *is* a "crime of violence." In reply, Petitioner concedes that the jury instructions in the underlying criminal case required the Government to prove both predicate offenses – conspiracy and murder – in order for the jury to find him guilty of Counts 27 and 60, and therefore, only one of the predicates needs to constitute a "crime of violence." As the Court has already determined murder in aid of racketeering qualifies as a "crime of violence," it need not consider the issue of whether conspiracy also qualifies.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion to Vacate (Doc. No. 59) is **DENIED,** and this action is **DISMISSED.**

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE